```
            UNITED STATES BANKRUPTCY COURT
               NORTHERN DISTRICT OF IOWA
```

IN RE:

THOMAS AUGUSTINE                              Chapter 13
SANDRA LEE AUGUSTINE

    Debtors.                        Bankruptcy No. 05-00937S

         ORDER RE: MOTION TO DISTRIBUTE FUNDS
                  AND CLOSE CASE

The matter before the court is the disposition of the proceeds of an asset disclosed to the trustee after the Chapter 13 debtors were discharged and the case was closed. Debtors ask that the funds be distributed to them. The standing trustee resists and asks the court to allow distribution to creditors.

Hearing on the debtors' motion was held July 14, 2009 in Sioux City. Donald H. Molstad appeared as attorney for debtors Thomas Augustine and Sandra Augustine. Carol F. Dunbar appeared on behalf of herself. The parties filed post-hearing briefs on August 21 and September 1 (docs. 87, 88). The contested matter is now submitted for decision. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (E).

## Findings of Fact

Debtors filed a Chapter 13 petition and plan on March 11, 2005. Their bankruptcy schedules listed two secured creditors. American State Bank was owed $39,416.37, secured by a mortgage on debtors' home valued at $90,000. Debtors owed a car loan to a credit union. They scheduled no priority claims. Their schedule of unsecured creditors listed 20 credit card accounts with balances totaling $191,103.39.

Gambling led to the bankruptcy filing. Debtors' Statement of Financial Affairs, at question 2, listed income of $127,660 in 2004 from gambling. Question 8 asks debtors to list losses from "fire, theft, other casualty or gambling" within one year prior to filing the petition. Debtors answered "none" to this question, but amended their answer on May 5, 2005 to report gambling losses of $123,000 in the year before filing.

Debtors' second modified plan, filed May 25, was confirmed on July 5, 2005. The plan provided for one payment in the amount of $2,518.81, then monthly payments of $2,835.81 for 35 months. The liquidation analysis estimated that unsecured creditors would have received $2,469.68 if the case had been filed under Chapter 7. Filed unsecured claims totaled $149,729.50.

On April 25, 2008, the trustee filed a final report and account stating that debtors had completed their plan. Disbursements to unsecured creditors totaled $92,519.47, a pro rata payment of approximately 62%. Debtors received their discharges on May 23, 2008, and the case was closed.

On February 24, 2009, the court granted the trustee's motion to reopen the case; she sought to administer the proceeds of a recently disclosed asset.

On March 10, 2009, debtors filed a "Motion to Compromise." They stated that prior to the filing of the petition, Sandra Augustine had taken medication for Parkinson's disease. They believed the medication caused Sandra to develop a gambling addiction. During the pendency of their Chapter 13 case, debtors consulted with attorneys about pursuing a products liability

2

claim against the manufacturer of the drug.  Eventually they entered into a retainer agreement with Richard Salkow, a Los Angeles attorney, to pursue their claim.  The motion to compromise asked the court to authorize debtors to participate in the settlement of a pending class action and to hold the proceeds of the settlement in their attorney's trust account until the court determined how the proceeds should be distributed.  The motion was granted.

On April 2, 2009, debtors amended their bankruptcy schedule of personal property, Schedule B, to disclose for the first time an interest in "a products liability claim" of "unknown" value.

On June 18, 2009, debtors filed a motion stating that their attorney was holding $73,656.44 in his trust account, which represented their share of the proceeds of the products liability claim after payment of attorney fees and costs.  They asked that the money be distributed to them and that their case be closed.  The standing trustee objects.

At the July 14 hearing on the motion, attorney Molstad stated that debtors first told him about the products liability claim in August 2005, the month after the plan was confirmed.  Molstad referred debtors to Marc Humphrey, an attorney in Des Moines who, in turn, put them in contact with Richard Salkow, an attorney in Los Angeles.  There was no evidence as to whether debtors kept attorney Molstad advised of their communications with the litigation attorneys.

Debtors spoke with Humphrey for the first time in approximately September 2005.  In a letter dated September 28,

3

2005, Humphrey expressed willingness to investigate the Augustines' claim and the possibility of pursuing litigation. He asked for authorization to obtain medical records. He noted his understanding that the drug at issue was first prescribed for Sandra Augustine in December 2002. Exhibit A.

Humphrey's letter dated October 5, 2005 was a cover letter for a medical journal article discussing a Mayo Clinic study. The article was titled "Pathological Gambling Caused by Drugs Used to Treat Parkinson's Disease." Exhibit B.

On November 20, 2006, Humphrey wrote a letter asking Sandra Augustine to sign and return documents forwarded from Richard Salkow. Humphrey explained how to complete an authorization for release of medical records. He also recommended to "get Mr. Salkow on board" and asked Sandra to sign a contingency fee retainer agreement with the law firm of Sherman & Salkow. Exhibit C.

In a letter dated February 1, 2007, Humphrey conveyed to Sandra Augustine the substance of a call with Salkow. Humphrey related Salkow's belief that the two-year limitation period for filing an individual lawsuit in Iowa had run. Humphrey stated, "I calculated that two years based upon the time when you received the article at the gamblers anonymous meeting back in November of 2004." In the balance of his letter, Humphrey discussed other litigation options. Exhibit D. There was no evidence of the substance of the article received in November 2004.

On August 8, 2008, Salkow wrote to the Augustines to update

4

them on the status of the products liability litigation.  He informed them that his partner had died unexpectedly, but that his new firm, Salkow Law, would complete the litigation.  The letter stated that a new retainer agreement, with terms identical to the original agreement, was enclosed for their signature and return.  Exhibit E.  There was no evidence to establish the date of the first retainer agreement.

None of the attorney letters indicate knowledge of the pending Chapter 13 bankruptcy case.

## Discussion

Property of the bankruptcy estate includes all legal or equitable interests of the debtor as of the commencement of the case, wherever located and by whomever held.  11 U.S.C. § 541(a)(1).  It includes "all causes of action that the debtor could have brought at the time of the bankruptcy petition." United States ex rel. Gebert v. Transport Admin. Services, 260 F.3d 909, 913 (8th Cir. 2001); accord Mixon v. Anderson (In re Ozark Rest. Equip. Co., Inc.), 816 F.2d 1222, 1225 (8th Cir. 1987).

Every debtor must file schedules of assets.  11 U.S.C. § 521(a)(1).  The debtors' schedule of personal property asked them to list "contingent and unliquidated claims of every nature," and any other property of any kind not already listed.  Doc. 1 at 17-18, lines 20, 33.  They marked "none."  The Fifth Circuit has said that the duty to disclose an unliquidated claim arises when the debtor has the most basic knowledge of the claim:

5

>     The debtor need not know all the facts or even the
>     legal basis for the cause of action; rather, if the
>     debtor has enough information prior to confirmation to
>     suggest that it may have a possible cause of action,
>     then that is a "known" cause of action such that it
>     must be disclosed.  Any claim with potential must be
>     disclosed, even if it is contingent, dependent, or
>     conditional.

Browning Mfg. v. Mims (Matter of Coastal Plains, Inc.), 179 F.3d 197, 208 (5th Cir. 1999) (citations omitted).  The duty to provide accurate information about the debtor's assets is a continuing one.  Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1286 (11th Cir. 2002); Matter of Coastal Plains, Inc., 179 F.3d at 208.  The duty to amend schedules may continue beyond the closing of the case.  See Fed.R.Bankr.P. 1007(h) (disclosure of property acquired post-petition).  The debtor must amend the schedules if circumstances change or if the debtor otherwise becomes aware that the original schedules are not accurate.

   The Augustines' interest in the products liability claim belonged to the estate on the date of their petition.  Prior to filing their bankruptcy petition, debtors knew that Sandra had a gambling problem.  They may also have known prior to filing that there was a connection between her gambling and the Parkinson's medication.  If not, they learned of the link no later than the fall of 2005 after talking with attorney Humphrey.  Debtors knew early in their case that they had an interest in a products liability claim.  It is not relevant that debtors had not signed an attorney retainer agreement prior to the confirmation of their plan.

   If debtors had listed the products liability claim in their

6

original schedules, they could have proposed a method of applying the unliquidated asset to the payment of creditors. The court in In re Baines, 263 B.R. 868 (Bankr. S.D. Ill. 2001), discussed three Chapter 13 cases devoting the proceeds of unliquidated claims to plan payments. In one case, the debtors were parties to a pending class action lawsuit; they promised to pay the trustee an unknown amount annually as they received funds. In the other two cases, the debtors promised to pay a percentage of a then-unknown amount of proceeds from workers compensation claims. Id. at 870. In Watters v. McRoberts (In re Watters), 167 B.R. 146, 147 (S.D. Ill. 1994), debtors with an unliquidated personal injury claim were required to commit the entire recovery to the plan to obtain confirmation.

If the Augustines had disclosed the claim at any time during the life of their plan, the court would have resolved any dispute about the treatment of the asset in a modified plan. The trustee could have asked the court to modify the plan to require that any proceeds be paid to unsecured creditors as disposable income. See In re Tolliver, 257 B.R. 98 (Bankr. M.D. Fla. 2000) (trustee's motion to modify confirmed plan granted to distribute proceeds discovered after confirmation); In re Studer, 237 B.R. 189 (Bankr. M.D. Fla. 1998) (same); see also Arnold v. Weast (In re Arnold), 869 F.2d 240 (4th Cir. 1989) (debtor's income increased substantially post-confirmation; motion to increase plan payments granted). Post-confirmation modification could have extended the plan term to five years. 11 U.S.C. § 1329(a)(2). This change would have allowed for liquidation of

7

the Augustines' pre-petition asset.

Debtors argue that, in retrospect, they have paid into the plan more than the value of the claim, thus satisfying the best interest test of § 1325(a)(4). The argument assumes that the proceeds of the claim are not disposable income. If the claim had been disclosed in 2005, plan confirmation would have required, at least, payment of the value of the asset in addition to disposable income. Alternatively, confirmation may have required debtors to commit any proceeds of the claim as disposable income, in addition to their income from wages and other sources. See In re Watters, 167 B.R. at 147 (entire personal injury recovery was disposable income without regard to exempt status); Matter of Springer, 338 B.R. 515, 520 (Bankr. N.D. Ga. 2005) (proceeds of unliquidated workers compensation claim had to be committed to plan to satisfy disposable income test); In re Studer, 237 B.R. at 192 (settlement proceeds disclosed post-confirmation were disposable income to be distributed under modified plan); In re Lush, 213 B.R. 152, 156 (Bankr. C.D. Ill. 1997) (any proceeds of workers compensation claim were disposable income).

The usual binding effect of confirmation does not entitle debtors to keep the asset from their creditors. "[D]ebtors are not permitted to fail to disclose potential assets, and then rely upon this fact to argue that lawsuit has vested in them because confirmation has occurred in the meanwhile." Thompson v. Quarles, 392 B.R. 517, 523 (S.D. Ga. 2008). In the case of an undisclosed asset, plan confirmation does not effect any change

8

in the status of the asset as property of the estate. Undisclosed property cannot be abandoned by the trustee. Property that is neither abandoned nor administered in the case remains property of the estate. Id.; 11 U.S.C. § 554(d).

Debtors contend that they acted in good faith throughout the case. The court need not find otherwise, but notes that the failure to disclose an unliquidated claim in bankruptcy risks judicial estoppel in the non-bankruptcy proceeding. See Burnes v. Pemco, 291 F.3d at 1287 (discussing cases that infer intentional concealment); Tokheim v. Georgia-Pacific Gypsum, LLC, 606 F.Supp.2d 988, 996 (N.D. Iowa 2009) (failure to amend schedules to disclose asset is representation to bankruptcy court that claim does not exist).

Debtors alleged that the Parkinson's medication taken by Sandra Augustine caused them harm. Part of that harm was the debt incurred with the creditors listed in debtors' bankruptcy schedules. The creditors who filed claims were not paid approximately $57,210.03. It would not be inequitable to pay the proceeds of the claim to these creditors.

IT IS ORDERED that debtors' motion is denied. Debtors' attorney shall turn over to the standing trustee the proceeds of the products liability claim in the approximate amount of $73,656.44.

DATED AND ENTERED December 7, 2009

William L. Edmonds, Bankruptcy Judge

9